IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

WARREN KEITH HENNESS,

    Petitioner,

        -vs-

CHARLOTTE JENKINS, Warden,
 Chillicothe Correctional Center

    Respondent.

Case No. 2:14-cv-2580

District Judge Michael R. Barrett
Magistrate Judge Michael R. Merz

## TRANSFER ORDER

This capital habeas corpus case is before the Court on Petitioner's Motion for Leave to File an Amended Petition to Address Newly Ripe Claims under *Hurst [v. Florida*, 577 U.S. ___, 136 S. Ct. 616 (2016)] (ECF No. 43).  The Warden has responded with a Motion to Transfer Henness' Successive Petition . . . or, in the Alternative, Deny Leave to Amend (ECF No. 45). Petitioner has filed a Response (ECF No. 46) and the Warden has filed a Renewed Motion to Transfer (ECF No. 47).

**Procedural History**

On March 20, 1992, Richard Myers was murdered in Franklin County, Ohio. Petitioner Warren Keith Henness was convicted by a jury on three counts of aggravated murder with capital specifications and sentenced to death in connection the Myers' murder.  His conviction

1

was affirmed on appeal by the Ohio Supreme Court. *State v. Henness*, 79 Ohio St. 3d 53 (1997). He then filed his first Petition for Writ of Habeas Corpus in Case No. 2:01-cv-43 (the "First Case") in this Court on September 19, 2000 (ECF No. 1 in the First Case). On October 31, 2007, this Court dismissed the Petition in the First Case with prejudice (ECF No. 140). That judgment was affirmed on appeal. *Henness v. Bagley*, 766 F.3d 550 (6th Cir. 2014), *cert denied*, 135 S. Ct. 1708 (2015).

Henness filed the Petition in this case on December 11, 2014, after the Sixth Circuit decision but before the denial of certiorari. He pled ten Grounds for Relief, all challenging Ohio's method of lethal injection (ECF No. 1, PageID 2-4). The Warden moved to transfer the case to the Sixth Circuit as a second-or-successive petition (ECF No. 7). The Magistrate Judge denied transfer on the grounds that Henness' claims arose under Ohio's April 28, 2014, lethal injection protocol which had been adopted "long after judgment in [the] prior case became final." (ECF No. 14, PageID 193.) This analysis was consistent with prior decisions of this Magistrate Judge and other Judges of this Court at that time. *Id.* at PageID 194, *citing Tibbetts v. Warden*, No. 1:14-cv-602, ECF No. 11, PageID 126-28 (S.D. Ohio Dec. 29, 2014) (Merz, M.J.); *Raglin v. Mitchell*, No. 1:00-cv-767, 2013 U.S. Dist. LEXIS 141199, at *94 (S.D. Ohio Sep. 29, 2013) (Barrett, J.); *Smith v. Pineda*, No. 1:12-cv-196, 2012 U.S. Dist. LEXIS 121019, at *13-14 (S.D. Ohio Aug. 27, 2012) (Merz, M.J.), *supplemented by* 2012 U.S. Dist. LEXIS 154037, at *2-4 (S.D. Ohio Oct. 26, 2012), *then adopted by* 2012 U.S. Dist. LEXIS 171759, at *2 (S.D. Ohio Dec. 4, 2012) (Rose, J.); *Chinn v. Bradshaw*, No. 3:02-cv-512, 2012 U.S. Dist. LEXIS 93083, at *8-9 (S.D. Ohio July 5, 2012) (Sargus, J.)

Then came the Supreme Court's decision in *Glossip v. Gross*, 135 S. Ct. 2726 (2015), which persuaded this Court that method-of-execution claims had to be brought in a civil rights

action under 42 U.S.C. § 1983. *Landrum v. Robinson*, 2015 U.S. Dist. LEXIS 146195 (S.D. Ohio Oct. 28, 2015). The Magistrate Judge then ordered this case transferred to the Sixth Circuit for that Court to permit or deny permission for the case to proceed (ECF No. 30). On recommittal from Judge Barrett, the Magistrate Judge withdrew the transfer order and recommended on May 10, 2016, that Respondent's then-pending motion to dismiss be denied without prejudice to its renewal not later than thirty days after the mandate issued in *Adams v. Bradshaw*, 826 F.3d 306 (6th Cir. 2016)("*Adams III*")(ECF No. 41); Judge Barrett adopted that recommendation without objection (ECF No. 42). The mandate in *Adams* issued January 23, 2017; Respondent's Renewed Motion to Transfer (ECF No. 47) is timely filed under the permission to renew previously granted.

# Analysis

The determination of whether a habeas application is second or successive is committed to the District Court in the first instance. *In re: Kenneth Smith*, 690 F.3d 809 (6th Cir. 2012); *In re Sheppard*, 2012 U.S. App. LEXIS 13709 (6th Cir. May 25, 2012). When the District Court errs in that determination, the practice of the Sixth Circuit has been to find that permission to proceed is unnecessary and to remand the case. *Jackson v. Sloan*, 800 F.3d 260, 261 (6th Cir. 2015), citing *Howard v. United States*, 533 F.3d 472 (6th Cir. 2008); *In re: Cedric E. Powell*, Case No. 16-3356, 2017 U.S. App. LEXIS 1032 (6th Cir. Jan. 6, 2017).

In the Report and Transfer Order of November 2, 2015, the Magistrate Judge determined that Henness' Petition in this case, as then pled, was a second-or-successive habeas application (ECF No. 30, PageID 433-34). That Order was not carried out and the case was not transferred

3

because the Order was withdrawn (ECF No. 38). Thus the issue of whether the Petition as originally pled is second-or-successive is before the Court for *de novo* determination.

There is no dispute that this is Henness' second-in-time habeas application. See Case No. 2:01-cv-043. Nor is it disputed that the application[1] attacks the same judgment that was collaterally attacked in the prior case. Recognizing those two elements, Henness argues this case is not second-or-successive because "it asserts claims with predicates that arose after the filing of the original petition." (ECF No. 46, PageID 550, *citing In re Jones*, 652 F.3d 603 (6th Cir. 2010), *Panetti v. Quarterman*, 551 U.S. 930 (2007), and *Stewart v. Martinez-Villareal*, 523 U.S. 637 (1998)). He argues that his claims are properly brought in habeas because they assert "lethal injection cannot [ever] be administered in a constitutional manner and his claim could render his death sentence effectively invalid." *Id.* at PageID 551, *quoting Adams v. Bradshaw*, 826 F.3d 306, 321 (6th Cir. 2016)("*Adams III*"[2]).

The "effectively invalid" language in *Adams III* is quoted from *Adams I*. The full passage from *Adams III* reads:

> Lastly, notwithstanding the warden's observation that a method-of-execution challenge can only be brought in a § 1983 action under *Hill v. McDonough*, 547 U.S. 573, 126 S. Ct. 2096, 165 L. Ed. 2d 44 (2006), Adams can bring this claim in a § 2254 proceeding. As the warden submits, *Glossip* stated that *Hill* "held that a method-of-execution claim must be brought under § 1983 because such a claim does not attack the validity of the prisoner's conviction or death sentence." *Glossip*, 135 S. Ct. at 2738. As we observed in *Adams*, 644 F.3d at 483, however, Adams's case is distinguishable from *Hill* because Adams argues that lethal injection cannot be administered in a constitutional manner, and his claim "could render his death sentence effectively invalid." *Cf. Hill*, 547 U.S. at

---

[1] It is immaterial for present purposes whether the relevant pleading is the Petition (ECF No. 1) or the First Amended Petition (ECF No. 26).

[2] Although Henness refers to this decision as "Adams II," it is the third published opinion of the Sixth Circuit in the Adams habeas corpus case. To avoid confusion, this Court cites them as follows: *Adams v. Bradshaw*, 644 F.3d 481 (6th Cir. 2011), as *Adams I*; *Adams v. Bradshaw*, 817 F.3d 284 (6th Cir. 2016), as *Adams II*, and *Adams v. Bradshaw*, 826 F.3d 306 (6th Cir. 2016), as *Adams III*.

> 580. Our decision in *Adams* is consistent with the Supreme Court's reasoning in *Nelson*, which suggested that, under a statutory regime similar to Ohio's, "a constitutional challenge seeking to permanently enjoin the use of lethal injection may amount to a challenge to the fact of the sentence itself." 541 U.S. at 644. **Thus, to the extent that Adams challenges the constitutionality of lethal injection in general and not a particular lethal-injection protocol, his claim is cognizable in habeas.** *Adams*, 644 F.3d at 483. However, as the Supreme Court observed in *Glossip*, a challenge to a particular procedure that concedes the possibility of an acceptable alternative procedure is properly brought in a § 1983 action. *Glossip*, 135 S. Ct. at 2738.
>
> Adams may still have a means of exploring a method-of-execution claim in his § 1983 action challenging Ohio's lethal injection protocol. *See In re Ohio Execution Protocol Litig.*, No. 2:11-CV-01016-GLF-MRA[3] (S.D. Ohio) (Frost, J.). In *Frazier v. Jenkins*, a panel of this court denied relief in a habeas challenge to the constitutionality of Ohio's administration of its lethal injection protocol—a challenge to the procedure, not a per se challenge to lethal injection—and explained that the claim should be pursued in a § 1983 action. 770 F.3d 485, 505 (6th Cir. 2014), *cert. denied*, 135 S. Ct. 2859, 192 L. Ed. 2d 899 (2015). As in *Frazier*, Adams's constitutional challenge to Ohio's protocol can be explored within his ongoing § 1983 action. "[I]n order to obtain relief from his sentence, [Adams] would first have to gather facts showing that Ohio is unable to administer lethal injection in a constitutionally permissible manner. And this is precisely the type of discovery that [Adams] can pursue in his § 1983 litigation." *Scott*, 760 F.3d at 512.

826 F.3d 320-21 (emphasis supplied).

The case at issue in *Adams I, II,* and *III* was a first habeas corpus challenge to a capital sentence. His challenge to lethal injection as a method of execution was general: "lethal injection as a means of execution violates the prohibition against cruel and unusual punishment." *Id.* at 318. The District Court had rejected that claim and the Sixth Circuit affirmed, citing its decision in *Scott v. Houk*, 760 F.3d 497 (6th Cir. 2014). *Id.* In the interlocutory appeal that

---

[3] At the time *Adams III* was decided in June 2016, Judges Frost and Abel (GLF & MRA) had retired and the *In re Ohio Execution Protocol Litig*. (the "protocol Case") had been reassigned to Chief Judge Sargus and the undersigned.

5

produced *Adams I*, the court rejected Ohio's assertion that all method-of-execution claims must be brought in civil rights actions under 42 U.S.C. § 1983 and it adhered to that conclusion in the passage quoted above despite the intervening decision in *Glossip*. However, it noted that "Adams does not challenge the particular procedure adopted by Ohio as its lethal injection protocol. Rather" the petition was based on "the difficulties in carrying out executions, … the ever-shifting [Ohio] protocol has engendered fear and mental anguish to those on death row who do not yet have execution dates; and . . . that psychological harm is just as harmful as a physical harm." *Id.* at 319. The Sixth Circuit rejected this claim on the merits because it had not been pled in the state courts or the habeas petition and could not be added on appeal. Although rejecting Adams' claim on the merits, the court of appeals, as quoted above, continued to find that a challenge to the constitutionality of lethal injection in general and not a particular lethal-injection protocol" would be "cognizable in habeas" corpus. *Id.* at 321.

None of the *Adams'* opinions addresses the second-or-successive application question. However, the reasoning in *Adams III* undercuts Henness' argument that his petition is not second or successive because it is "newly arising." Lethal injection has been an authorized method of execution in Ohio since 1993; it became the sole authorized method in 2001 when John Byrd chose electrocution and essentially dared the State to proceed. Thus it was an authorized method of execution when Henness was convicted.

Henness pled a lethal injection ground for relief in his first Petition which read as follows:

> **Twenty-Fourth Ground for Relief:** The manner in which executions are carried out by the state of Ohio will subject Petitioner to cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

(Amended Petition, Case No. 2:01-cv-043, ECF No. 86, PageID 67.)

This Court denied relief on the Twenty-Fourth Ground, writing as follows:

> In his twenty-fourth ground for relief, Henness challenges the lethal injection procedure used in Ohio, contending the method constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution. (Petition, Doc. No. 86 at 94.) Respondent argues that the United States Supreme Court has not held that lethal injection is cruel or unusual, and that Henness is consequently not entitled to habeas corpus relief on that basis. (Return of Writ, Doc. No. 98 at 144-45.) Henness does not argue the issue in his traverse, and in his post-evidentiary hearing brief, he does not contest Respondent's argument, but merely copies his claim instead. (Petitioner's Post-Evidentiary Hearing Brief, Doc. No. 130 at 118.) Henness' claim is that the particular chemicals Ohio uses in administering lethal doses to death-sentenced inmates causes, or at least has the potential to cause, excruciating pain to the inmate. (Petition, Doc. No. 86 at 94.) He does not contend that lethal injection in any form is unconstitutional, only that the method currently used in Ohio is unconstitutional. *Id.* In *Hill v. McDonough*, 547 U.S. 573, 126 S.Ct. 2096, 2101-2, 165 L. Ed. 2d 44 (2006), the United States Supreme Court concluded that the plaintiff's challenge to Florida's lethal injection procedure was properly brought under 42 U.S.C. § 1983 rather than 28 U.S.C. § 2254 because the execution procedure challenged was not required by law. Like the statute in Florida, Ohio's statute setting forth the method of execution does not establish which drugs or even how many drugs must be used in carrying out the execution by lethal injection. Ohio Rev. Code § 2949.22. Henness' challenge to the specific drug protocol use[d] in Ohio, then, does not present a general challenge to execution by lethal injection. Consequently, granting the relief Henness seeks "would not necessarily foreclose the State from implementing the lethal injection sentence under present law, and thus it could not be said that the suit seeks to establish 'unlawfulness [that] would render a conviction or sentence invalid.'" *Hill,* 126 S.Ct. at 2103-4, *quoting Heck v. Humphrey,* 512 U.S. 477, 486, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). As such, Henness' claim is not one that is cognizable in habeas corpus, and it is denied for that reason.

*Henness v. Bagley*, 2007 U.S. Dist. LEXIS 80647, *184-86 (S.D. Ohio Oct. 31, 2007). In other words, Ground Twenty-Four of the First Case did not present a general enough challenge to lethal injection and was dismissed for lack of cognizability. Henness did not seek a certificate of

7

appealability on that Ground for Relief.

    Petitioner's claims for relief in the First Amended Petition read:

> **Ground One:** Keith Henness' execution by lethal injection under Ohio law will violate the Supremacy Clause.
>
> **Ground Two:** Keith Henness' execution by lethal injection under Ohio law will violate the Eighth Amendment because any drug DRC [the Ohio Department of Rehabilitation and Correction] can procure for use in lethal injections has a substantial, objectively intolerable risk of causing unnecessary, severe pain, suffering, degradation, humiliation, and/or disgrace.
>
> **Ground Three:** Keith Henness' execution by lethal injection under Ohio law will violate the Eighth Amendment because it causes a lingering and undignified death.
>
> **Ground Four:** Keith Henness' execution by lethal injection under Ohio law will violate the Eighth Amendment because the lack of legally available, effective drugs to conduct lethal-injection executions will result in the arbitrary and capricious imposition of the death penalty.
>
> **Ground Five:** Keith Henness' execution by lethal injection under Ohio law will be a human experiment on a non-consenting prisoner in violation of the Fourteenth Amendment.
>
> **Ground Six:** Keith Henness' execution by lethal injection under Ohio law will violate the Eighth Amendment because the lack of legally obtainable, effective drugs to conduct lethal-injection executions will cause psychological torture, pain and suffering.
>
> **Ground Seven:** Keith Henness' execution by lethal injection under Ohio law will violate the Eighth Amendment because of the substantial, objectively intolerable risk of serious harm due to DRC's maladministration of Ohio's execution protocol.
>
> **Ground Eight:** Keith Henness' execution by lethal injection under Ohio law will violate the Equal Protection Clause of the Fourteenth Amendment.
>
> **Ground Nine:** Keith Henness' execution by lethal injection under Ohio law will violate the Due Process Clause of the Fourteenth Amendment.

> **Ground Ten:** Keith Henness' execution by lethal injection under Ohio law will violate the Eighth Amendment because of his unique, individual physical and/or mental characteristics.

(First Amended Petition, ECF No. 26, PageID 284-86.)

Henness offers no argument as to how any of these claims are newly arising by analogy to the *Ford v. Wainwright*, 477 U.S. 399 (1986), incompetence to be executed claim in *Panetti*. The unavailability of drugs from manufacturers who previously supplied them is new, but that does not make the sentence invalid. Petitioner's arguments that compounded drugs or illegally imported drugs cannot be used again does not make the sentence invalid, but invites injunctive relief, temporary or permanent, against the use of those drugs, relief fully obtainable by Henness in the Protocol Case, where Henness is a plaintiff. Ground Two is remarkably parallel to the lethal injection claim made in the prior case, dismissed for lack of cognizability in habeas. Ground Seven seems to claim that, based on its history of attempts, Ohio will never be able to execute Henness constitutionally, but that also would seem to be a claim that is properly addressed with a prayer for injunctive relief. Ground Ten would come closer to a *Pannetti*-like claim if, but only if, one or more of Henness' purported "unique, individual physical and/or mental characteristics" were new in the sense of not having occurred before the First Case was final.

In *Panetti* and *Martinez-Villareal*, *supra*, the Supreme Court found claims of incompetence to be executed not to be second-or-successive because the incompetence was alleged to have arisen after the first habeas case was completed. In *In re Bowen*, 436 F.3d 699 (2006), and *In re: Curtis Jones*, *supra*, the Sixth Circuit found claims of ineffective assistance of trial counsel and *ex post facto* amendment of the parole system were not second or successive because they were not ripe when the first petition was filed, in Bowen's case, because they were

9

unexhausted and, in Jones' case, because they occurred after the original proceedings were complete.

In contrast, Henness' claims made in the Amended Petition are scattershot in terms of when they arose or indeed will arise in the future. As his counsel describe the claims:

> Henness' method-of-execution claims here are focused on the validity of his death sentence, not solely on the application of the current Ohio execution protocol. His challenges, while attacking the validity of Henness' death sentence, necessarily encompass the facts relevant to DRC's past actions in carrying out execution protocols and DRC's plans under the recently adopted execution protocol. Henness' claims do not solely address with factual particularity Ohio's current execution protocol, but they also include the details of the current availability of execution drugs, his medical conditions, as well as all of the failings of Ohio's execution protocols—past and present. Ohio cannot constitutionally carry out a lethal-injection execution on Henness because Ohio has demonstrated that it cannot lawfully obtain effective execution drugs, and it cannot constitutionally administer its execution protocols.
>
> Henness' lethal-injection habeas claims did not become ripe until the factual predicates that support those claims, including evidence related to DRC's constitutionally problematic administration of Ohio's execution protocols, the change in circumstances related to the administration of lethal injection (such as the unavailability of certain drugs), and the new releases of execution protocols altering the understanding of how Ohio intends to execute Henness. These factual predicates arose long after his initial habeas petition was adjudicated and therefore his claims are not second or successive. See *Sheppard*, 2013 U.S. Dist. LEXIS 5560, at *19 (citing *In re Jones*, 652 F.3d 603, 605 (6th Cir. 2010)).

(Response, ECF No. 46, PageID 551-52.) To paraphrase, Henness wants to present evidence in this habeas case of what Ohio has actually done in past executions and what it intends do in future executions, including executions under as-yet-unpromulgated lethal injection protocols.[4] How such evidence will be introduced in light of *Cullen v. Pinholster*, 563 U.S. 170 (2011), is

---

[4] Ohio is presently enjoined from executing Ronald Phillips, Raymond Tibbetts, and Gary Otte using the October 7, 2016, protocol. *In re: Ohio Injection Protocol Litig.*, 2017 U.S. Dist. LEXIS 11561 (S.D. Ohio Jan. 27, 2017).

undiscussed.  How such evidence will show Henness' sentence is invalid under clearly established Supreme Court precedent as of the time his conviction became final is also undiscussed.  What is clear is Henness' belief that, as death penalty facts continue to change, he can amend his petition or make claims in new petitions that change to reflect those facts and thus are "newly arisen."

This cannot be what the Sixth Circuit meant when it authorized "general" attacks on lethal injection death sentences in *Adams III*.  To do so would completely collapse in practice the distinction between § 1983 litigation and habeas corpus litigation[5].  If this gambit works for capital habeas litigation, why not for non-capital?  Suppose the inmate doing thirty years for drug trafficking can show a succession of n unconstitutional conditions of confinement imposed on him.  When he gets to n+1, does he then have a habeas claim that the State can no longer incarcerate him at all because it has proven incapable of confining him constitutionally in the past?

Whatever the appellate courts eventually decide about how general a method-of-execution claim must be for cognizablity in habeas, none of the precedent cited by Henness supports finding the First Amended Petition is other than second-or-successive.  At least Grounds for Relief One, Two, Three, Five, Seven, Eight, and Nine that Henness makes in the First Amended Petition would have been available to him when he filed his original habeas corpus case in this Court His failure to do so then constitutes an abuse of the writ.  Claims which represent an abuse of the writ in this sense are generally held to be second or successive. *See In re Bowen, supra*. This Judge's previous acceptance of the analogy of claims such as this to *Panetti* (i.e. that they were newly arisen) was in error.  To the extent Ground Ten relies on

---

[5] Unless, of course, merely omitting an alternative available method of execution, required in § 1983 cases per *Glossip*, makes the pleading resulting from the omission a proper habeas corpus petition.

Henness' individual conditions which existed at the time he filed his first Petition, Ground Ten is also an abuse of the writ and therefore barred as second or successive.

In addition to this conclusion about claims in the First Amended Petition, the Magistrate Judge finds the Motion to Amend to add a claim under *Hurst* is itself a second-or-successive habeas application. In *Moreland v. Robinson*, 813 F.3d 315 (6th Cir. 2016), the Petitioner simultaneously filed a motion for relief from judgment and a motion for leave to amend once the judgment was reopened. The Sixth Circuit held that both "motions are second or successive habeas petitions that the district court lacked jurisdiction to consider." Rather than denying Moreland's motions, the district court should have transferred them to this court to review as requests for permission to be filed." 813 F.3d at 319. More expansively, the Sixth Circuit wrote:

> Moreland's motions were second or successive petitions for habeas corpus relief that the district court lacked jurisdiction to review. Claims may not be presented in a second or successive petition for habeas corpus relief without permission from this court. 28 U.S.C. § 2244(b)(3); *Gonzalez v. Crosby*, 545 U.S. 524, 528, 532, 538, 125 S. Ct. 2641, 162 L. Ed. 2d 480 (2005). Failure to obtain precertification for the filing of such a petition deprives the district court of jurisdiction to adjudicate the claims raised in such a petition. *Burton v. Stewart*, 549 U.S. 147, 149, 152-53, 157, 127 S. Ct. 793, 166 L. Ed. 2d 628 (2007) (per curiam).
>
> Moreland's motions, although purportedly a Rule 60(b) motion and a post-judgment motion to amend, actually raise habeas claims. Rule 60(b) motions and motions to amend may not be used as vehicles to circumvent the limitations that Congress has placed upon the presentation of claims in a second or successive application for habeas relief. *Gonzalez*, 545 U.S. at 531-32; *Clark*, 764 F.3d at 658-59. Hence, when faced with what purports to be a Rule 60(b) motion or a motion to amend, federal courts must determine if it really is such a motion or if it is instead a second or successive application for habeas relief in disguise. *Gonzalez*, 545 U.S. at 530-31; *Clark*, 764 F.3d at 658-59. "[F]or the purposes of § 2244(b) an 'application' for habeas relief is a filing that contains one or more 'claims.'" *Gonzalez*, 545 U.S. at 530. A § 2244(b) claim is "an asserted federal basis for relief from a state court's judgment of conviction." *Id.* A movant is not making a habeas

12

> claim when he seeks only to lift the procedural bars that prevented adjudication of certain claims on the merits. *Id.* at 532 n.4. But he *is* making a habeas claim when he seeks to add a new ground for relief or seeks to present "new evidence in support of a claim already litigated." *Id.* at 531-32.

813 F.3d at 322-23. The Motion to Amend raises the questions whether *Hurst*, if applicable would invalidate Ohio's capital sentencing scheme and whether *Hurst* is retroactively applicable to cases on collateral review, but those are questions beyond our jurisdiction in a second-or-successive situation.

Because this Court has no jurisdiction to adjudicate the claims already pled or to decide the Motion to Amend, it is hereby ordered that this case be TRANSFERRED to the Sixth Circuit Court of Appeals for its determination under 28 U.S.C. § 2244(b) whether the Petitioner may proceed on all or any of his claims made or intended to be made.

This Transfer Order is STAYED until the expiration of time for the parties to object under Fed. R. Civ. P. 72(a) or until Judge Barrett thereafter disposes of those objections, whichever is later.

February 27, 2017.

s/ *Michael R. Merz*
United States Magistrate Judge
